**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| PHOENIX REO, LLC, as assignee of Phoenix NPL, LLC, assignee of the Federal Deposit Insurance Corporation, as Receiver for The National Republic Bank of Chicago, ) ) ) ) ) | Case No. 14-cv-8669 | |
| Plaintiff, ) ) | Judge Robert M. Dow, Jr. | |
| v. ) ) | | |
| ALBERT BABA, an individual, MARGRIT BABA, an individual, NELLA BABA, an individual, UNKNOWN OWNERS and NONRECORD CLAIMANTS, ) ) ) ) ) | | |
| Defendants. ) | | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Phoenix REO, LLC brings this mortgage foreclosure action against Defendants Albert Baba, Margrit Baba, Nella Baba, and any unknown owners and nonrecord claimants of the subject property located at 5940 N. Sacramento in Chicago, Illinois. Plaintiff alleges that Defendants Albert Baba and Margrit Baba borrowed $2,667,364.00 from Plaintiff in June 2003—securing the note with several properties, including the subject property—and they have now defaulted on that note. Plaintiff seeks damages, interest, attorneys' fees, and the foreclosure and sale of the subject property.

Before the Court are Plaintiff's motion for summary judgment against Defendant Albert Baba [50], Plaintiff's motion for default judgment against Defendants Margrit Baba, Nella Baba, Unknown Owners, and Nonrecord Claimants [53], Plaintiff's motion for entry of judgment of foreclosure and sale [54], and Plaintiff's motion to appoint a special commissioner [55]. For the reasons set forth below, Plaintiff's motions [50, 53, 54, 55] are granted.

**I.      Background**

On June 21, 2013, Albert Baba, Margrit Baba, and CLK, Inc. d/b/a Juliana Restaurant (collectively, the "borrowers") borrowed $2,667,364.00 from the National Republic Bank of Chicago ("NRBC").[1] The borrowers made, executed, and delivered to Plaintiff a promissory note in the full amount of the note, secured by a mortgage and a security agreement.

In the mortgage and security agreement, the borrowers granted Plaintiff a security interest in, among other things, five properties. Those properties are listed in Exhibit A to both the mortgage and the security agreement, and include (1) 7227 Keeler Avenue, Lincolnwood, Illinois, (2) 5940 North Sacramento, Chicago, Illinois, (3) 3001 West Peterson Avenue, Chicago, Illinois, (4) 2945–47 West Peterson Avenue, Chicago, Illinois, and (5) 2949 West Peterson Avenue, Chicago, Illinois. [See 52-1, at 26–30, 59–63.] The property at issue in this foreclosure action is the 5940 N. Sacramento Avenue property. Albert Baba is the present owner of the property and Nella Baba is a current occupant of the property.

Since March 2014, the borrowers have failed to make their monthly payments as required by the terms of the promissory note, thus putting them in default. Consequently, Plaintiff accelerated the loan such that the full balance became immediately due. As of September 29, 2015, Plaintiff calculates the amount due, including attorneys' fees, as follows [see 59, at 4]:

| | |
|---|---:|
| Unpaid Principal Balance: | $2,259,360.06 |
| Accrued Interest Through 9/29/15: | $298,107.80 |
| Default Interest Through 9/29/15 (plus $748.82 *per diem*): | $208,813.28 |
| Tax Advances: | $104,350.49 |
| Late Charge: | $12,213.30 |
| Environmental Assessment: | $5,400.00 |
| Attorneys' Fees and Costs to Arnstein & Lehr LLP: | $7,582.52 |
| **Total:** | **$2,895,827.45** |

---

[1] On October 24, 2014, the NRBC was closed by applicable regulatory authorities and the Federal Deposit Insurance Corporation ("FDIC") was appointed as receiver. On February 20, 2014, the FDIC sold some of NRBC's assets, including the loan at issue in this case, to Phoenix NPL, LLC via assignment. On August 4, 2015, Phoenix NPL, LLC transferred the subject loan and related documents to Phoenix REO, LLC.

In the present action, Plaintiff seeks judgment against Defendants in the amount of the unpaid balance[2] plus interest, attorneys' fees, and other applicable charges; a judgment of foreclosure and sale against Defendants on the 5940 N. Sacramento property; and the appointment of a special commissioner to sell the subject property.

## II.     Analysis

### A.     Motion for Summary Judgment

Summary judgment is proper if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). To avoid summary judgment, the opposing party must go beyond the pleadings and "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quotation omitted). A genuine issue of material fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248. The party seeking summary judgment has the burden of establishing the lack of any genuine issue of material fact. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Summary judgment is proper against "a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322. The party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "The mere existence of a

---

[2] At some point, Plaintiff sought to foreclose on the property located at 3001 West Peterson Avenue. See *Phoenix NPL, LLC v. Baba*, Case No. 14-cv-8637 (N.D. Ill.) (Pallmeyer, J.). With Plaintiff's approval, Defendants sold the Peterson Avenue property on July 21, 2013 for $463,633.00, and Plaintiff agreed to execute a partial release of the mortgage (*i.e.*, the same mortgage at issue in this matter) and dismiss the pending foreclosure action in return for the payment of a minimum amount of $385,000.00. The foreclosure action was subsequently dismissed on July 29, 2015. As a result of this arrangement, Plaintiff ultimately lowered the unpaid principal balance amount in this lawsuit from what it was at the outset (*i.e.*, $2,644,360.06) by $385,000.00, leaving a current unpaid principal balance of $2,259,360.06.

scintilla of evidence in support of the [opposing] position will be insufficient; there must be evidence on which the jury could reasonably find for the [opposing party]." *Anderson,* 477 U.S. at 252.

Here, Defendant Albert Baba does not dispute any of Plaintiff's allegations regarding the borrower's default on the loan. Instead, Defendant tries to create an issue of fact by arguing that the security agreement does not grant Plaintiff a security interest in the 5940 N. Sacramento property. Defendant's argument is not persuasive.

As explained above, both the mortgage and the security agreement include a detailed list of the various security interests that the borrowers granted to Plaintiff to secure their loan. This included security interests in five properties (listed by address in Exhibit A to both the mortgage and security agreement), including the property located at 5940 N. Sacramento. Thus, by the plain language of both the mortgage and the security agreement, the borrowers granted Plaintiff a security interest in the Sacramento property.

Defendant disagrees, advancing a technical argument based on certain definitions in the security agreement—specifically, "Property" and "Collateral." Specifically, Defendant notes that one of the representations in the preamble to the security agreement states that "Borrower maintains and operates a business at 3001 West Peterson Avenue, Chicago, Illinois," which the agreement defines as the "Property." [52-1, at 40.] The term "Property" is then used several times in the "Grant of Security Interest" provision—for example, the borrowers granted Plaintiff a security interest in the insurance policies governing the Property and also granted Plaintiff the right to defend any legal action against the Property. Plaintiff's security interests in the Property, combined with the other security interests granted to Plaintiff in the security agreement

(including the security interests in the five properties listed in Exhibit A to the agreement), are collectively referred to as the "Collateral."

Understanding the definitions of "Property" and "Collateral," Defendant Albert Baba points to the "Representations and Warranties of Borrower" provision in the security agreement, which includes a representation that "[t]he Collateral is located at the Property." [See 52-1, at 51.] Defendant argues that because the term "Property" refers to a *specific* property (*i.e.*, the one located at 3001 West Peterson Avenue), it is impossible for all of the "Collateral," including the four other properties offered as security, to be located at the Property. Defendant claims that the only logical reading of the security agreement must be that the property located at 3001 West Peterson Avenue is the *only* property in which Plaintiff holds a security interest pursuant to the security agreement. This argument is a nonstarter.

What Defendant fails to appreciate is that this contractual representation (*i.e.*, the aforementioned "representation and warranty") was made by the *borrowers—i.e.*, by Defendant himself. Thus, even if it is technically true that all of the "Collateral" is not physically located at the "Property," this would only mean that the borrowers (including Defendant Albert Baba) have breached one of their representations under the security agreement. But this breach would have no impact on the scope of the Collateral as defined in that agreement. As Plaintiff says, "based on the clear and plain meaning of the Security Agreement, Plaintiff was granted a security interest in various assets which together defined the 'Collateral' under the Security Agreement and which were located on the Sacramento Property as well as the other four properties listed in Exhibit A to the Security Agreement." [62, at 3.] The Court concludes that Plaintiff has a security interest in the Sacramento property.

Defendant, still acting under the incorrect assumption that the promissory note was secured only by the property located at 3001 West Peterson Avenue, also argues that because the Peterson Avenue property was sold subject to Plaintiff's approval, Plaintiff's interests under the security agreement have been fully satisfied, such that summary judgment should be denied. This argument is also a nonstarter. As explained above, the "Collateral" used to secure the promissory note includes, but is not limited to, the property located at 3001 West Peterson Avenue, and so the sale of that property does not impact Plaintiff's rights to foreclose on the remaining forms of collateral listed in the mortgage and the security agreement. Summary judgment in favor of Plaintiff and against Defendant Albert Baba is therefore warranted.

### B. Motion for Default Judgment

Plaintiff also filed a motion for default judgment [53] against against Defendants Margrit Baba, Nella Baba, Unknown Owners, and Nonrecord Claimants. Despite having been served,[3] these Defendants have failed to file an appearance, answer, or otherwise defend the allegations set forth in Plaintiff's complaint.

Under Federal Rule of Civil Procedure 55, a court may enter a default judgment when a defendant fails to plead or otherwise defend. Fed. R. Civ. P. 55(a). On motion for default judgment, a court takes all well-pleaded allegations as to liability as true. *Black v. Lane*, 22 F.3d 1395, 1399 (7th Cir. 1994). The decision to enter a default judgment lies within the district court's discretion. *O'Brien v. R.J. O'Brien & Assocs.*, 998 F.2d 1394, 1398 (7th Cir. 1993). A default judgment establishes as a matter of law that a defendant is liable as to each of a plaintiff's claims. *Breuer Elec. Mfg. Co. v. Toronado Sys. of Am., Inc.*, 687 F.2d 182, 186 (7th Cir. 1982).

---

[3] Plaintiff served Margrit Baba by substitute service on October 23, 2014 [53, ¶ 2], Plaintiff served Nella Baba by personal service on October 23, 2014 [53, ¶ 3], and Plaintiff served Unknown Owners and Nonrecord Claimants via publication [53, ¶ 4].

Because Defendants have failed to appear, plead, or otherwise defend the claims against them, the Court concludes that default judgment is appropriate, and Plaintiff's motion [53] is therefore granted.

**C.      Motion for Entry of Judgment of Foreclosure and Sale**

Plaintiff moves the Court, pursuant to 735 ILCS 5/15-1506 of the Illinois Mortgage Foreclosure Law, for the entry of a Judgment of Foreclosure and Sale in its favor and against Albert Baba, Margrit Baba, Nella Baba, Unknown Owners, and Nonrecord Claimants.

Based on the lack of any disputed issues of material fact regarding Defendants' default on their loan obligations and Plaintiff's security interest in the property located at 5940 N. Sacramento in Chicago, Illinois, Plaintiff's motion for entry of judgment of foreclosure and sale [54] is granted. Plaintiff is instructed to email a proposed Judgment of Foreclosure and Sale to the Proposed Order Box (Proposed_Order_Dow@ilnd.uscourts.gov) within seven days of this order.

As to the amount of the judgment, Plaintiff claims damages in the amount of $2,259,360.06 for the unpaid balance on the Note; $298,107.80 in accrued interest through 9/29/2015; $208,813.28 in default interest through 9/29/2015 (plus a per diem rate of $748.82 after 9/29/2015); $104,350.49 in tax advances; $12,213.30 in late charges; $5,400 for an environmental assessment; and $7,582.52 in attorneys' fees, for a total judgment of $2,895,827.45 plus per diem interest. Plaintiff has provided adequate support for its damages calculation.

Defendants' only objection to Plaintiff's calculation of the amount owed is their request that they be credited $463,633.00—the sale price of the property located at 3001 West Peterson Avenue (*i.e.*, one of the five properties used to secure the loan). The Court disagrees. While the

7

Peterson Avenue property did sell for $463,633.00, Plaintiff alleges that it only received $385,000.00 from that sale (and Defendants do not dispute this allegation). Accordingly, Defendants are only entitled to a principal reduction of $385,000.00 based on the sale of the Peterson Avenue property. And indeed, after filing this lawsuit, Plaintiff reduced the principal balance from what it was at the outset (*i.e.*, $2,644,360.06) by $385,000.00, leaving a remaining principal balance of $2,259,360.06. This calculation accurately reflects the requested credit.

      **D.**      **Motion to Appoint Special Commissioner**

Plaintiff moves the Court, pursuant to § 1506(f) of the Illinois Mortgage Foreclosure Law (735 ILCS 5/15-1506(f)) and 28 U.S.C. § 2001(a), to appoint The Judicial Sales Corporation as Special Commissioner to effectuate the sale at public auction of the real property commonly known as 5940 N. Sacramento, Chicago, Illinois, pursuant to the terms of the Judgment of Foreclosure and Sale. Plaintiff's motion [55] is granted.

**III.**    **Conclusion**

For the reasons stated above, the Court grants Plaintiff's motion for summary judgment [50], motion for default judgment [53], motion for entry of judgment of foreclosure and sale [54], and motion to appoint special commissioner [55]. Judgment is entered in favor of Plaintiff Phoenix REO, LLC and against Defendants in the amount of $2,895,827.45, inclusive of attorneys' fees, plus ongoing interest fees of $748.82 per day after September 29, 2014. The Court appoints The Judicial Sales Corporation as the Special Commissioner for the purposes of effectuating the sale at public auction of the real property commonly known as 5940 N. Sacramento, Chicago, Illinois.

Plaintiff is instructed to email a proposed Judgment of Foreclosure and Sale and any other proposed orders to the Proposed Order Box (Proposed_Order_Dow@ilnd.uscourts.gov)

within seven days of this order. The Court's entry of a Judgment of Foreclosure and Sale and Final Judgment will follow in due course.

Dated: January 15, 2016

_____
Robert M. Dow, Jr.
United States District Judge